UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MELVIN SANTANA,                                 :
                                                :
                      Petitioner,               :
                                                :
             - against-                         :
                                                :
WAYNE MULLER, Assistant Field                   :
Office Director, ECF Case Office of             :
Detention and Removal for U.S.                  :
Immigration and Customs Enforcement;            :
WILLIAM JOYCE, Assistant Field Office           :
Director, Office of Detention and Removal       :
for U.S. Immigration and Customs                :
Enforcement; CHRISTOPHER                        :
SHANAHAN, New York Field Office                 :
Director for the Office of Detention and        :
Removal for U.S. Immigration and Customs        :
Enforcement; SHAUN GOLDEN, Sheriff              :
of Monmouth County Correctional Facility;       :
NAPOLITANO, Secretary of Homeland               :
Security; ERIC HOLDER,                          :
Attorney General of the United States;          :
U.S. DEPARTMENT OF                              :
HOMELAND SECURITY,                              :
                                                :
                      Respondents.              :
-------------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: March 21, 2012 |

12 Civ. 430 (PAC)

ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

        Petitioner Melbin Santana petitions for a writ of habeas corpus, pursuant to 28 U.S.C. §

2241, challenging his confinement by United States Immigration and Customs Enforcement

("ICE") under § 236(c) of the Immigration and Nationality Act, 8 U.S.C. §1226(c), pending his

removal proceedings.  The Court heard oral argument on March 2, 2012.  For the reasons that

follow, Petitioner's writ of habeas corpus is DENIED.

1

**BACKGROUND**

Santana is a citizen of the Dominican Republic who entered the United States as a lawful

permanent resident in 1990. (Petitioner's Memorandum for Writ of Habeas Corpus ("Pet.

Mem."), Ex. A; Respondents' Memorandum in Opposition ("Resp. Mem."), 2.)  On July 11,

2002, Santana pleaded guilty to sexual misconduct.  He was sentenced to six years probation by

the Bronx County Criminal Court on September 27, 2002.  (Resp. Mem. 2; Declaration of

Natasha Oeltjen ("Oeltjen Decl."), Ex. 1.)

On September 17, 2011, ICE agents arrested Santana during an enforcement operation

that targeted aliens who had committed crimes, including sex offenders.  (Resp. Mem. 3; Oeltjen

Decl., Ex. 2.)  Santana has been in custody since ICE has commenced removal proceedings,

charging him as removable (1) under INA §237(a)(2)(A)(iii) as an alien convicted of an

aggravated felony, specifically, sexual abuse of a minor; and (2) under §237(a)(2)(E)(i) as an

alien convicted of a crime of domestic violence or child abuse.  (Pet. Mem., Ex. A; Resp. Mem.

3.)  ICE determined that Santana's removal charges subjected him to mandatory detention under

INA §236(c). (Resp. Mem. 3; Oeltjen Decl., Ex. 3.)  Santana moved to terminate the removal

proceedings, arguing that his conviction was not for an aggravated felony.  (Resp. Mem. 3.)  On

December 20, 2011, an Immigration Judge ("IJ") denied the motion, and concluded that Santana

was removable under both charges. (Pet. Mem., Exh. A; Resp. Mem. 3.)

On January 18, 2012, Santana filed his habeas petition to challenge his mandatory

detention and removal.  Santana argues that §236(c) does not apply to him because he was not

taken into ICE custody until years after his conviction, rather than immediately "when . . .

released" from criminal incarceration.  He seeks an order directing respondents to release him or

to provide an individualized bond hearing before an IJ.  (Pet. Mem. 1-2; Resp. Mem. 4.)  He also

argues that the means of challenging the applicability of §236(c) in this case, a hearing governed by the standards set forth in Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999), is unconstitutional. (Pet. Mem. 12-13.)

## DISCUSSION

A. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 2241. On January 18, 2012, the date when Santana filed this habeas petition, he was detained at 201 Varick Street, New York, NY 10014 and was thus within this Court's jurisdiction at the time of filing. Rumsfeld v. Padilla, 542 U.S. 426, 437 (2004). Respondents do not contest that this Court's jurisdiction. (Resp. Mem. 4.) Instead they submit that the Varick Street Facility warden, Assistant Field Office Director Tay-Taylor, should be the only respondent in this case because he was Santana's "immediate custodian." (Resp. Mem. 4 n.3 (citing Padilla, 542 U.S. at 437).)

Padilla establishes a default "immediate custodian" rule in "core" habeas challenges to present physical confinement. Under this rule, the proper habeas respondent is the warden of the facility where the prisoner is being held, and not the Attorney General or other remote supervisory official. Padilla, 542 U.S. 426, 434. While the Court "left open the question of whether the Attorney General is a proper respondent to a habeas petition filed by an alien pending deportation," id. at 435 n.8, a majority of district courts in this Circuit have applied the immediate custodian rule to habeas petitions filed by incarcerated aliens challenging their physical detentions prior to deportation. See, e.g., Zhen Yi Guo v. Napolitano, No. 09 Civ. 3023 (PGG), 2009 WL 2840400, at *3 (S.D.N.Y. Sept. 2, 2009) (citing cases); Liu v. Napolitano, No. 09 Civ. 1560 (BSJ) (S.D.N.Y. April 14, 2009). Accordingly, Assistant Field Office Director Tay-Taylor is the only proper respondent in this case.

B.  Statutory Framework

Pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a), ICE has

the authority to arrest and detain any alien pending a decision in removal proceedings, as well as

discretion to release certain aliens.  Aliens who have been convicted of certain enumerated

offenses are subject to mandatory detention under INA §236(c), which provides in relevant part

as follows:

> (1) Custody
> The Attorney General shall take into custody any alien who-
> . . .
> (B) is deportable by reason of having committed any offense covered in
> section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . .
> when the alien is released, without regard to whether the alien is released on
> parole, supervised release, or probation, and without regard to whether the alien
> may be arrested or imprisoned again for the same offense.

8 U.S.C. §1226(c)(1).  Congress enacted this provision pursuant to §303(b) of the Illegal

Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Div. C, Pub. L. No.

104-208, §303(b), 110 Stat. 3009-586 (Sept. 30, 1996), out of concern that deportable criminal

aliens who were not detained pending their removal hearings would continue to reoffend and fail

to appear at their hearings in large numbers.  See Demore v. Kim, 538 U.S. 510, 518-20, (2003).

In Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001), the Board of Immigration Appeals

("BIA") held that the language of §236(c) suggests that "Congress was not attempting to restrict

mandatory detention to criminal aliens taken immediately into [INS] custody at the time of their

release from a state or federal correctional institution."  23 I. & N. Dec. at 124.  In applying

principles of statutory construction, the BIA concluded that the language in §236(c)(2),

providing that the Attorney General may release "an alien described in paragraph (1)" of

§236(c), "when read in isolation, [is] susceptible to different readings" and is therefore

ambiguous.  Id. at 120.  The BIA found that this "description" included only the categories of

removable aliens enumerated in subparagraphs (A) through (D) of INA §236(c)(1), and that the

"when the alien is released" clause of (c)(1) described only the point at which the Attorney

General's detention duty arose.  The BIA concluded that the statute prohibited such aliens'

release from immigration custody regardless of how or when they entered such custody.  Id. at

121.

      C.  Standard of Review

      In Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837

(1984), the Supreme Court established a two-step framework for courts to apply when reviewing

an administrative agency's interpretation of a statute.  First, the Court must consider "whether

Congress has directly spoken to the precise question at issue."  Id. at 842.  If the statute is

unambiguous, "that is the end of the matter; for the court, as well as the agency, must give effect

to the unambiguously expressed intent of Congress."  Id. at 842-43. If the statute is "silent or

ambiguous with respect to the specific issue," the Court must then determine whether the

agency's determination is "based on a permissible construction of the statute."  Id. at 843.  If the

Court concludes that the agency's interpretation is permissible, the Court must defer to that

interpretation.  Id.

      D.  Interpretation of Section 236(c)

      Courts in this district have divided on whether Congress intended mandatory detention

only for aliens who have been immediately detained "when . . . released" from criminal custody.

Several courts have rejected the BIA's interpretation on this point.  See Louisaire v. Muller, 758

F. Supp. 2d 229, 236 (S.D.N.Y 2010) ("The clear purpose of § 1226(c)(1) is to authorize the

mandatory detention of immigrants who have committed offenses enumerated within §

1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same*

*offenses*, even if they are still serving part of their sentence out in the community, under 'parole, supervised release, or probation.'" (citing Garcia v. Shanahan, 615 F. Supp. 2d 175, 182 (S.D.N.Y. 2009)) (emphasis in original); Jean v. Orsino, No. 11 Civ. 3682 (LTS) (S.D.N.Y. June 30, 2011) (Docket No. 22) ("[T]he text of the mandatory detention provision in Title 8, Section 1226(c) unambiguously provides for such detention only when the person is taken into immigration custody contemporaneously with his release from criminal custody."); Apricio v. United States, No. 11 Civ. 437 (RJH), (S.D.N.Y. April 7, 2011) ("If Congress had intended to allow the Attorney General to detain an alien at any time after the alien was released, it could have done so simply by using language such as 'after,' 'in the event that,' or 'whenever.'").

Other courts have accepted the BIA's interpretation of the statute in Rojas.  See Mendoza v. Muller, No. 11 Civ. 7857 (RJS), 2012 WL 252188, at *3 (S.D.N.Y. Jan. 25, 2012) ("Consistent with the text and structure of the statute, it is not unreasonable to treat all criminal aliens in the same manner and require their detention regardless of whether they evaded detection by immigration officials for hours, days, months, or years after their release from custody for the crimes enumerated in this section."); Gomez v. Napolitano, No. 11 Civ. 1350 (JSR), 2011 WL 2224768, at *3 (S.D.N.Y. May 31, 2011) (finding BIA's interpretation of § 236(c) consistent with Congressional policy underlying the statute); Sulayao v. Shanahan, No. 09 Civ. 7347 (PKC), 2009 WL 3003188, at *7 (S.D.N.Y. Sept. 15, 2009) (stating that BIA's reading of § 236(c) was "a permissible interpretation of an ambiguous text, and one that is supported by logic and the legislative history of the statute").  Neither the Supreme Court nor the Second Circuit has ruled on the meaning of the "when . . . released" language in § 236(c).

This Court concludes that the language of § 236(c) is ambiguous.  The statute provides that the alien is subject to mandatory detention "when . . . released."  As the court in Gomez

observed, this language "could mean at the moment of release, or it could mean at any time following release."  Gomez, 2011 WL 2224768, at *3; see also Shanahan, 2009 WL 3003188, at *4 (observing that dictionary definitions of "when" can include "the characteristic of 'immediacy,' referring . . . to an action or activity occurring 'at the time that,'" or alternatively "'at or during the time that'") (internal quotations and citations omitted).  Since Congress has not clarified whether an alien remains subject to mandatory detention at any time after his release from criminal custody, § 236(c) is ambiguous.

Under Chevron, the Court must determine whether the BIA's interpretation of § 236(c) was "reasonable."  467 U.S. at 843.  In Rojas, the BIA examined the plain language of § 236(c) and concluded that:

> [the] "when released" clause is no more a part of the *description* of an alien who is subject to detention than are the other concluding clauses ... [which] simply make it plain that the duty to detain is not affected by the character of an alien's release from criminal incarceration or the possibility that an alien may be rearrested on criminal charges.

Rojas, 23 I. & N. Dec. at 122.  The BIA then considered Congressional goals underlying IIRIRA and observed that "Congress was frustrated with the ability of aliens, and particularly criminal aliens, to avoid deportation if they were not actually in [INS] custody when their proceedings were complete."  Id.  Indeed, before Congress enacted the current statute, aliens who committed the crimes enumerated in § 236(c) were often released following their bond hearings and then either fled prior to removal proceedings or commited additional crimes. See, e.g., S.Rep. No. 104–48, p. 2 (1995) ("[O]ver 20 percent of nondetained criminal aliens fail to appear for deportation proceedings."); 142 Cong. Rec. 7972 (1996) ("77% of noncitizens convicted of felonies are arrested at least one more time."). Thus, Congress determined that mandatory detention, rather than individualized bond hearings, was appropriate for this class of individuals. The BIA's interpretation of § 236(c) is consistent with these Congressional goals and is

therefore entitled to this Court's deference.

Santana argues that because he has been living in society for nine years from the date of his 2002 conviction, the concerns about flight risk and recidivism no longer apply to him. By pleading guilty to sexual abuse of a minor, however, Santana entered a class of immigrants subject to mandatory detention pending their deportation hearings. See 8 U.S.C. §§ 1227(a)(2)(A)(iii); (a)(2)(E)(i); Mendoza, 2012 WL 252188, at *3. That ICE failed to apprehend Santana for nine years does not change his status as a member of this class.

E. Constitutionality of the Detention Challenge Procedure

Santana also contends that the procedures set forth in Matter of Joseph for challenging his mandatory detention status are unconstitutional. There is no indication in the record that Santana sought a ruling under Joseph, or that he appealed any adverse custody ruling of the IJ to the BIA. Where a petitioner does not seek out a Joseph hearing, there is "no occasion to review the adequacy of Joseph hearings generally in screening out those who are improperly detained." Kim, 538 U.S. at 514 n.3; Guillaume v. Muller, 11 Civ. 8819 (TPG), 2012 WL 383939, at *6 (S.D.N.Y. Feb. 7, 2012). The Court therefore will not consider Santana's constitutional challenge.

## CONCLUSION

For the reasons discussed, Santana's petition for a writ of habeas corpus is denied. The Clerk of the Court is directed to enter judgment and close this case. The issue raised by Santana is of interest and should be definitively resolved by the Second Circuit at the earliest opportunity. Although an appeal in Gomez is pending before the Second Circuit to address the same question presented here, the government has advised the Court that the appeal is likely moot in light of recent developments in that case. In the interest of resolving the disagreement among courts in

this Circuit over the proper interpretation of § 236(c), the Court therefore issues a certificate of

appealability in this case.

Dated: New York, New York
       March 21, 2012

                                           SO ORDERED

                                           _____
                                           PAUL A. CROTTY
                                           United States District Judge

9